UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY OUTLAW,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF CAHOKIA, CHIEF JAMES JONES, DET. MATTHEW MASON, COUNTY OF ST. CLAIR, SHERIFF RICHARD WATSON, SUPT. PHILLIP MCLAURIN, LT. NANCY SUTHERLIN, SGT. STEVEN STRUBBERG, OFFICER CHRISTOPHER HOERNIS, LT. JOHN FULTON, SGT. MATTHEW R. SCOTT, SGT. BRIAN CUNNINGHAM and LT. KARL L. PANNIER,<br><br>      Defendants. | Case No. 16-cv-456-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants St. Clair County, Sheriff Richard Watson, Superintendent Phillip McLaurin, Lieutenant Nancy Sutherlin, Sergeant Steven Strubberg, Officer Christopher Hoernis, Lieutenant John Fulton, Sergeant Matthew R. Scott, Sergeant Brian Cunningham and Lieutenant Karl L. Pannier (Doc. 83). They seek dismissal of Counts IV, V, VI, VII and VIII. Plaintiff Jerry Outlaw has responded to the motion (Doc. 93).

**I.    Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1)

describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think:  What rule of law

*requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

## II. Facts Alleged

Accepting as true all factual allegations in the Second Amended Complaint and drawing all reasonable inferences therefrom in Outlaw's favor, the pleading establishes the following relevant facts for the purposes of this motion:

In March 2015, Outlaw was a 19-year-old man with an IQ of 55.[1] Witnesses directly or indirectly identified him as the perpetrator, along with his brother Delarren Mason, of a robbery, although Outlaw did not actually commit the robbery. A few days later, on March 17, 2015, law enforcement officers went to Outlaw's home and arrested him. When the law enforcement officers questioned Outlaw in custody, they knew of his intellectual deficiencies and took advantage of them to intimidate, coerce or trick Outlaw into signing a waiver of his *Miranda* rights and falsely confessing to the robbery.

Following his interrogation, Outlaw was detained at the St. Clair County Jail ("Jail") and charged in state court with the robbery. At the jail, Outlaw was attacked by another inmate who was older and more sophisticated than he was. When he protected himself from the attack,

---

[1] A full scale IQ score of two standard deviations below the norm – a score of 70 on the Wechsler Adult Intelligence Scale, the most commonly given intelligence test – is generally accepted as the threshold score indicating significant subaverage intellectual functioning. *See* American Association on Intellectual and Developmental Disabilities, *Intellectual Disability: Definition, Classification and Systems of Support* 35 (11th ed. 2010).

Sutherlin issued him a disciplinary ticket for fighting. The ticket did not give Outlaw notice of the alleged violation. The Jail's Adjustment Committee, made up of Strubberg and Hoernis, heard the ticket, but was not impartial and did not give Outlaw the opportunity to be heard or to call witnesses. The Adjustment Committee found Outlaw guilty based entirely on evidence from Sutherlin and another Jail officer and sentenced Outlaw to thirty days in solitary confinement. McLaurin approved that placement in solitary confinement.

In solitary confinement, conditions are worse than those in the general population. Outlaw was confined in a small cell without any human contact for twenty-three hours a day and was only let out once a day to shower. In solitary, he was not allowed to make calls, to have visits, to purchase anything from the commissary, or to have any yard or recreation time. He had no television in his cell and was only allowed to have two books. His cell had no window to the outside and only a small window to the hallway. The cell was infested with bugs, including bedbugs, spiders and red ants. The cell walls were dirty, the bed mats smelled of urine and the sink and toilet were filthy. The sink had only cold water that tasted like bleach. Outlaw was not provided cleaning supplies. These conditions caused Outlaw extreme mental anguish. Defendants Sutherlin, Fulton, Scott, Cunningham and Pannier were the supervisors in charge of the maximum security unit in which Outlaw was housed in solitary confinement and were responsible for the unit's conditions.

On October 30, 2015, the state court dismissed the criminal case against Outlaw, and Outlaw was immediately released from the Jail. By that time, he had spent approximately seven and a half months in the Jail.

The Second Amended Complaint contains nine causes of action. Those relevant to this

motion are as follows:

> **Count IV:** A claim against McLaurin, Sutherlin, Strubberg, Hoernis, Fulton, Scott, Cunningham and Pannier (collectively, the "Jail defendants") for deliberate indifference to his health and safety because of the conditions of solitary confinement.
>
> **Count V:** A claim against the Jail defendants for conspiring to deprive him of his constitutional rights in connection with his placement in solitary confinement and his conditions of confinement there.
>
> **Count VI:** A claim against the Jail defendants for the state law tort of intentional infliction of emotional distress.
>
> **Count VII:** A claim against the Jail defendants for the state law tort of civil conspiracy.
>
> **Count VIII**: A claim against Watson under a *respondeat superior* theory for the state law violations of his subordinates.

The St. Clair County defendants now ask the Court to dismiss the foregoing counts on the grounds that the allegations fail to plausibly suggest a right to relief on Outlaw's claims. Outlaw contends his Second Amended Complaint is satisfactory.

## III. Analysis

The Court addresses each relevant count in turn.

### A. Count IV: Conditions of Confinement

Count IV is a claim under 42 U.S.C. §1983 for violation of Outlaw's Fourteenth Amendment due process rights because of the inhumane conditions of his confinement for the thirty days he spent in solitary confinement.

Because Outlaw was a pretrial detainee, his claim falls under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment Cruel and Unusual Punishment Clause. However, the legal standards are essentially the same. *Burton v. Downey*, 805 F.3d 776, 784 (7th

Cir. 2015). The test for an Eighth Amendment violation has two components, an objective and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the condition of confinement about which the inmate complains must be objectively serious; it must result in the denial of "'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the official must have a sufficiently culpable state of mind, that is, he must at a minimum be deliberately indifferent. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.[2]

The Jail defendants argue that Outlaw has not sufficiently pled that they were personally involved in any of the conditions in solitary confinement that Outlaw alleges were unconstitutional. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotations and citations omitted). An official is personally involved if he knows about the unconstitutional conduct and facilitates, approves, condones or deliberately turns a blind eye to it. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). The doctrine of *respondeat superior* cannot be used to impose liability on a supervisor for a subordinate's unconstitutional actions. *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

Outlaw pled simply that McLaurin, the Jail superintendent, approved his housing in

---

[2] There has been some uncertainty about whether *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), changed this standard for pretrial detainees. In *Kingsley*, a pretrial detainee sued for excessive force, and the Supreme Court held that the appropriate standard was whether the officers' use of force was objectively unreasonable, not whether the officers were subjectively aware that their use of force was unreasonable. *Id.* at 2470. *Kingsley* calls into question whether deliberate indifference is the correct standard for a pretrial detainee's conditions of confinement claim, but the Seventh Circuit Court of Appeals has suggested the Eighth Amendment standard still applies. *See Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 554 n. 31 (7th Cir. 2016).

solitary confinement pursuant to an Adjustment Committee recommendation. However, Outlaw does not plead any facts plausibly suggesting McLaurin either created the allegedly inhumane conditions in the solitary cell or knew that the conditions were so bad and facilitated, approved, condoned or turned a blind eye to those conditions. Mere placement of the plaintiff in severe solitary confinement conditions with "[i]nactivity, lack of companionship and a low level of intellectual stimulation" for thirty days is not cruel and unusual punishment, *see Bono v. Saxbe*, 620 F.2d 609, 613-14 (7th Cir. 1980) (considering such restrictions for an indefinite period).[3] Absent allegations plausibly suggesting he knew of the other conditions there that might render the environment unconstitutional (*e.g.*, bugs, bleachy water, smelly mattress, dirty walls, filthy toilet and sink, lack of cleaning supplies), McLaurin cannot be said to have been personally involved in any constitutional deprivation or deliberately indifferent to Outlaw's safety or health needs. Merely alleging McLaurin was the Jail superintendent is not enough to suggest he knew about Outlaw's housing conditions, was personally responsible for them, or was deliberately indifferent to them. To so find would be to allow *respondeat superior* liability, which § 1983 does not permit. Outlaw has not pled facts plausibly suggesting McLaurin was personally involved in any constitutional deprivation or deliberately indifferent to any of Outlaw's health or safety needs.

The same goes for Sutherlin, who wrote Outlaw's disciplinary ticket, and Strubberg and Hoernis, the Adjustment Committee members who found Outlaw guilty and recommended placement in solitary confinement. No allegations plausibly suggest they created the conditions Outlaw faced in solitary confinement or were personally involved because they knew about those

---

[3] Indeed, recently Justice Kennedy implicitly recognized that, despite its long-term adverse consequences, solitary confinement is not *per se* unconstitutional: "Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates." *Davis v. Ayala*, 135 S. Ct. 2187, 2210 (Kennedy, J., concurring), *reh'g denied*, 136 S. Ct. 14 (2015).

conditions such that they could have facilitated, approved, condoned or turned a blind eye to them or been deliberately indifferent to them.

As for Sutherlin, Fulton, Scott, Cunningham and Pannier, as supervisors of the unit in which Outlaw was housed in solitary confinement, Outlaw's allegations suggest that these defendants were personally involved simply because they were in charge and were responsible for the unit's overall condition, the classic *respondeat superior* theory which cannot support liability under § 1983. Absent any allegation plausibly suggesting these defendants created or were aware of the conditions in Outlaw's cell and were deliberately indifferent to those conditions, the Second Amended Complaint does not state a viable claim against these defendants.

While Outlaw has sufficiently alleged conditions in his solitary cell that could amount to a deprivation of "the minimal civilized measure of life's necessities," he has not alleged any facts plausibly suggesting any of the Jail defendants were personally involved in the creation or maintenance of those conditions or that they were deliberately indifferent to them. For example, there is no allegation that Outlaw or any other inmate complained to any defendant or filed a grievance about the cell conditions or that any defendant personally observed the conditions of Outlaw's cell or was told about those conditions. *See, e.g., Haywood v. Hathaway*, 842 F.3d 1026, 1031-33 (7th Cir. 2016) (warden who knew of extreme cold and broken window in segregation unit and who toured unit could be found deliberately indifferent to inmate's need for sufficient heat).

For these reasons, the Court will dismiss Count IV against the Jail defendants without prejudice with leave to replead.

B.     Count V: § 1983 Conspiracy

In Count V, Outlaw alleges two conspiracies, one of which involved the Jail defendants conspiring with each other to place and keep Outlaw in solitary confinement in violation of his due process rights. In order to state a claim for conspiracy under § 1983, a plaintiff must plead facts plausibly suggesting individuals reached an understanding to deprive the plaintiff of his constitutional rights. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).[4] "[A] bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). To survive a motion to dismiss, a conspiracy plaintiff must make plausible allegations of a right to relief. *Id.* at 971. While a plaintiff need not plead a conspiracy with the particularity required for fraud claims, *see* Fed. R. Civ. P. 9(b), he must at least plead the parties to the conspiracy, the general purpose of the conspiracy and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). However, after *Bell Atlantic* and *Iqbal*, bare conclusions that defendants are "leagued in a conspiracy" are not enough. *Cooney*, 583 F.3d at 971; *see Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011) ("Her assertion of a conspiracy is an unsupported legal conclusion that we are not bound to accept as true. . . . The complaint includes not a whiff of a conspiratorial agreement or any improper complicity between [the two defendants] to support the conclusory allegation."). Additionally, if there is no underlying constitutional violation, there can be no viable conspiracy claim. *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016), *pet. for cert.*

---

[4] Usually, a § 1983 conspiracy claim is alleged against private actors who conspire with state actors, not simply against state actors who are already subject to § 1983 liability. Private actors are not ordinarily subject to § 1983 liability because they are ordinarily not acting under color of state law but may be if they willfully participate in joint activity with state actors. *See Reynolds*, 488 F.3d at 764; *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). "[C]laims for alleged conspiracies between state actors are possible under section 1983, though as we have observed, they add nothing but needless complexity." *Ewell v. Toney*, No. 16-1009, 2017 WL 1315666, at *3 (7th Cir. Apr. 10, 2017).

*filed*, No. 16-8240 (Mar. 6, 2017).

In this case, since Outlaw has failed to adequately plead an underlying claim based on the conditions of his confinement, he has no viable claim for conspiracy to commit that constitutional violation.

Even if he had adequately pled an underlying constitutional violation, Outlaw makes bare allegations of conspiracy without any actual facts plausibly suggesting the defendants reached an understanding to deprive Outlaw of his constitutional rights. Instead, he pleads in a conclusory fashion that the Jail defendants "reached an agreement among themselves" to put and keep Outlaw in solitary confinement in inhumane conditions in violation of his constitutional rights, "acted in concert with each other," and "conspired by concerted action." These are the type of bare allegations like those in *Cooney* and *Redd* that do not plausibly suggest any conspiratorial agreement between the defendants or joint activity that would entitle Outlaw to relief on a conspiracy theory. In fact, the only factual basis to even arguably support a conspiracy is that the defendants all worked at the Jail and were involved in either placing Outlaw in solitary confinement or supervising the unit in which he was housed. A reasonable inference of conspiracy cannot be drawn from those facts absent other allegations plausibly suggesting an agreement.

For these reasons, the Court will dismiss Count V against the Jail defendants without prejudice with leave to replead.

  C. <u>Count VI: Intentional Infliction of Emotional Distress</u>

In Count VI, Outlaw claims the acts of the Jail defendants were extreme and outrageous and were undertaken intentionally or recklessly to cause Outlaw severe emotional distress. A

claim for intentional infliction of emotional distress has three elements: (1) the conduct involved was "truly extreme and outrageous," (2) the defendant either intended to inflict, or knew there was a high probability he would cause, severe emotional distress, and (3) the defendant actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). To support an intentional infliction of emotional distress claim, the conduct must be "so severe that no reasonable man could be expected to endure it." *Feltmeier*, 798 N.E.2d at 84 (citing Restatement (2d) of Torts § 46, comment j, at 77-78 (1965)).

The Jail defendants argue that Outlaw has failed to adequately plead facts plausibly suggesting the second element – that they intended to cause him severe emotional distress or acted in reckless disregard of the risk of it. Outlaw points to the control the Jail defendants had over him to highlight the outrageousness of their conduct when they placed him in solitary confinement in inhumane conditions where they knew he would suffer severe emotional distress.

The Court agrees with the Jail defendants that Outlaw has not pled facts plausibly suggesting any defendant intended to cause Outlaw severe emotional distress or was reckless to that risk. No allegations suggest that those involved in initiating or implementing disciplinary action – Sutherlin, Strubberg, Hoernis and McLaurin – knew anything about Outlaw or the particular conditions in the solitary cell he was destined to occupy that would take their decisions out of the realm of a run-of-the-mill jail disciplinary decision. As for the supervisors of the unit in which Outlaw was housed – Sutherlin, Fulton, Scott, Cunningham and Pannier – as the Court has explained above, no allegation suggests they were aware of the inhumane conditions in Outlaw's cell or anything about Outlaw himself such that they would have known allowing him to remain in

11

solitary confinement risked severe emotional distress beyond the ordinary distress experienced by any detainee in solitary confinement. Outlaw appears to want to hold the Jail defendants liable simply because they placed and maintained him in solitary confinement for thirty days, but such confinement, by itself, is not *per se* outrageous and is, in fact, an ordinary incident in any jail or prison.

For these reasons, the Court will dismiss Count VI against the Jail defendants without prejudice and with leave to replead.

### D. Count VII: State Law Civil Conspiracy

In Count VII, Outlaw alleges in a conclusory fashion that the defendants conspired to accomplish an unlawful purpose by an unlawful means, including intentionally inflicting him with emotional distress. A state law claim for conspiracy has three elements: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004) (citing *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill. 1994)). "[T]he agreement is a necessary and important element of a cause of action for civil conspiracy," although it is not in and of itself a tort. *Adcock*, 645 N.E.2d at 894.

For the same reasons the Court dismissed Outlaw's § 1983 conspiracy claim in Count V, it dismissed this claim as well. Since the underlying tort of intentional infliction of emotional distress claim is being dismissed, there is no underlying wrong pled to support the third element of the conspiracy claim. Additionally, Outlaw has not alleged facts plausibly suggesting any agreement or understanding among the defendants. Count VII against the Jail defendants will be

dismissed without prejudice with leave to replead.

E.     Count VIII:  *Respondeat Superior*

In Count VIII, Outlaw seeks to hold Watson liable in his official capacity as the sheriff of St. Clair County for the state law torts committed by his employees at the Jail. Outlaw concedes in his brief he is not seeking to hold Watson liable for the federal wrongs of his employees which, as noted above, is not permitted under § 1983. This claim will be dismissed because all the underlying state torts alleged have been dismissed. Outlaw will have a chance to replead Count VIII in an amended pleading.

## IV.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the motion to dismiss filed by St. Clair County, Watson and the Jail defendants (Doc. 83);

- **DISMISSES without prejudice** Counts IV, V, VI and VII against the Jail defendants and Count VIII against Watson;

- **ORDERS** that Outlaw shall have 30 days from entry of this order to file a Third Amended Complaint in which he may attempt to replead the claims dismissed by this order;

- **WARNS** Outlaw that if he makes insufficient allegations to support his claims in a Third Amended Complaint, the Court will consider dismissing those claim with prejudice. Outlaw has had sufficient time to conduct discovery to uncover facts, if they exist, supporting his claims. If, on his fourth try, he is unable to plead sufficient facts, the Court will assume he is unable to do so; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   April 26, 2017**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**